IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
UNITED STATES OF AMERICA    )
                            )    CRIMINAL ACTION NO.
     v.                     )        2:15cr199-MHT
                            )            (WO)
ELDRICK DEON McNEAL         )
```

OPINION AND ORDER

This criminal case is now before the court on the question whether defendant Eldrick Deon McNeal has the mental capacity to stand trial--specifically, whether he is "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a).

Based on the evidence in the record and the testimony presented at a competency hearing held on February 22, 2016, the court concludes, by a preponderance of the evidence, that McNeal is not currently competent. The court will therefore recommit him to the custody of the Attorney General "for such a

reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d)(1).  The court will also order that, if these efforts at competency restoration prove successful, McNeal's evaluators provide not only "a certificate to that effect," § 4241(e), but also a separate psychiatric or psychological report addressing whether McNeal was sane at the time of the alleged offense, based on an evaluation conducted pursuant to §§ 4242(a) and 4247(b) and (c).

## I.  COMPETENCY

McNeal stands charged with being a felon in possession of a firearm in violation of 18 U.S.C.

§ 922(g)(1).[1]  Defense counsel filed an unopposed motion for a competency evaluation.  As the court noted in granting it, records of inpatient psychiatric treatment McNeal received in 2002 documented that he suffered from "significant learning deficits" and "auditory processing deficits" and displayed an "overall pattern of borderline intellectual functioning," and that he

---

1. Although McNeal pleaded guilty pursuant to a plea agreement, he moved to withdraw his plea based on a provision of the agreement that permitted withdrawal if the presentence report recommended that he be sentenced under the Armed Career Criminal Act, 18 U.S.C. § 924(e).  The presentence report did so recommend, the government therefore agreed that McNeal was entitled to withdraw his plea, and the court granted his motion. Order (doc. no. 69).

It is thus unnecessary to decide whether McNeal was competent at the time he entered his plea. See United States v. Wingo, 789 F.3d 1226, 1238 (11th Cir. 2015) ("If a meaningful inquiry into [the defendant's] competency [at that time] can be conducted, the district court must determine [his] competency at the time that he pled guilty.  If not, or if after a meaningful hearing [he] is found to have been incompetent at the time of his guilty plea, the guilty plea must be vacated, subject to the government's right to try [him] at such time that [he] is competent." (citations and internal quotation marks omitted)).

had been hospitalized several times and prescribed psychotropic medication, including an anti-psychotic. United States v. McNeal, No. 2:15CR199-MHT, 2015 WL 7721211, at *1 (M.D. Ala. 2015) (Thompson, J.). Based on this evidence and on representations made by McNeal's counsel, the court found that there was reasonable cause to believe that McNeal might not be competent.

McNeal was committed to the Federal Correctional Institution in Butner, North Carolina, for evaluation. He was assessed by Dr. Manuel E. Gutierrez, a forensic psychologist, who provided both a written report and oral testimony.[2]  Dr. Gutierrez interviewed defense counsel, reviewed records related to McNeal's criminal, educational, and mental-health history, conducted nine hours of psychological testing and clinical interviews,

---

2. Both the government and defense counsel briefly examined Dr. Gutierrez on the stand, but neither meaningfully contested his conclusions nor offered any other evidence for the court to consider.

and observed McNeal's behavior over the course of approximately a month and a half.

Dr. Gutierrez diagnosed McNeal with a number of different substance-abuse disorders, antisocial personality disorder, and--as most directly relevant to his competency--a neurocognitive disorder of unspecified etiology. During this evaluation, McNeal received an I.Q. score of 44. Dr. Gutierrez explained that this score "would be suggestive of a moderate to severe Intellectual Disability," which would in turn entail "deficits in adaptive functioning that result in failure to meet developmental and socio-cultural standards for person independence and social responsibility." Forensic Eval. (doc. no. 63) at 12.

However, Dr. Gutierrez expressed the belief that this score might somewhat overstate McNeal's genuine deficits. As for adaptive functioning, Dr. Gutierrez noted that, although his educational records revealed "some evidence of deficits in social participation and

5

independent living in his school environment, ... his day to day functioning at FCI Butler was not consistent with a moderate to severe Intellectual Disability [because he] was able to navigate the compound independently, and he did not require the assistance of an inmate companion ... with completing daily needs." Id. As for the I.Q. score itself, Dr. Gutierrez noted that McNeal had previously received an score of 76, at the age of 15, and that, although there were "no obvious indications of malingering," McNeal sometimes "did not appear to be paying attention to the test stimuli[,] or ... did not comprehend the test items." Id.

Although McNeal did not report any traumatic brain injury that could account for this significant disparity in I.Q., Dr. Gutierrez explained that his "lengthy history of significant substance abuse" could have cause his "intellectual abilities [to] diminish[] over time." Id.

6

McNeal also performed very poorly on the psychometrics administered to assess competency. He had trouble identifying the locations of various personnel in a courtroom or explaining their roles, "essentially described his prior interactions with the legal system as going before the judge and signing various papers," and, though he understood he might be incarcerated, "did not convey an understanding regarding how much time he could be facing." Id. at 13. Another battery of questions which, according to Dr. Gutierrez, can be "helpful in determining if a person is feigning deficits in legal knowledge," turned out to be "fruitless" and had to be discontinued because McNeal repeatedly stated that he did not understand the content of the questions. Id. Finally, on a test "specifically designed to provide information on competence to stand trial in adult defendants with significant intellectual limitations," McNeal's results

"fell slightly below the mean score of those who were found to be incompetent." Id. at 14.

Although Dr. Gutierrez was unable "definitively [to] conclude[]" that McNeal was incompetent, he recommended that the court so find--"out of an abundance of caution." Id. Although Dr. Gutierrez's conclusion is somewhat tenative, 18 U.S.C. § 4241(d) does not require certainty. Instead, it requires this court to declare a defendant incompetent if it finds "by a preponderance of the evidence" that he is incompetent. The court finds that the weight of the evidence supports the conclusion that McNeal is not competent.

18 U.S.C. § 4241(d)(1) requires the court to order the Attorney General to hospitalize an incompetent defendant for a period of time not to exceed four months in order for mental-health personnel to attempt to restore him to competency and to determine whether there is a substantial probability that he will become

8

competent in the foreseeable future. (An extension of this period is also possible under § 4241(d)(2).) Notably, Dr. Gutierrez expressed the belief that "participation in competency restoration and educational groups would be of benefit to" McNeal. Forensic Eval (doc. no. 63) at 15. The court will therefore order McNeal recommitted for purposes of competency restoration.

## II. SANITY

At the competency hearing held on February 22, 2016, the government and the defense both orally requested that, if McNeal is successfully restored to competency, his sanity at the time of the commission of the alleged offense should then also be evaluated, given the possibility that the deficits identified during his competency assessment might bear on his criminal culpability.

9

Ordinarily, a court will order an examination to determine sanity at the time of the offense only after a defendant has filed a notice pursuant to Federal Rule of Criminal Procedure 12.2 and the government has made a motion for such an examination. See 18 U.S.C. § 424(a); Fed. R. Crim. P. 12.2(a) and (c). However, the court has the inherent authority to order a sanity examination under other appropriate circumstances. See United States v. Pfeifer, 2014 WL 6673844, at *3 (M.D. Ala. 2014) (Thompson, J.); see also United States v. McSherry, 226 F.3d 153, 155-56 (2d Cir. 2000) (collecting cases).

"When a defendant does not knowingly and voluntarily request a psychological examination for the insanity determination, an order requiring the examination may raise a Fifth Amendment concern." Pfeifer, 2014 WL 6673844, at *3. But courts of appeals have consistently held that "where the defendant has interposed the defense of insanity, the Fifth

10

Amendment's privilege against self-incrimination is not violated by a court-ordered psychiatric examination." United States v. Byers, 740 F.2d 1104, 1111 (D.C. Cir. 1984).  Here, both defense counsel and the government have requested that the court order this examination, and the court finds that "these requests provide a sufficient basis to overcome any Fifth Amendment concern and to empower this court to order this examination."  Pfeifer, 2014 WL 6673844, at *4.

Because successive psychiatric recommitments cause inconvenience to the defendant as well as to the court and unnecessarily prolong the period of time during which his prosecution is pending, and because McNeal is likely to raise a sanity defense (and the government is likely to request a sanity examination) if this case does proceed, this assessment should be conducted during the restoration recommitment, if and when McNeal becomes competent and therefore capable of adequately participating.  Since the purposes and permissible uses

11

of the competency and sanity examinations are different, however, they must be conducted and reported separately.  See 18 U.S.C. § 4241(f) ("A finding by the court that the defendant is mentally competent to stand trial shall not prejudice the defendant in raising the issue of his insanity as a defense to the offense charged, and shall not be admissible as evidence in a trial for the offense charged.").

* * *

It is therefore ORDERED as follows:

(1) Defendant Eldrick Deon McNeal is declared mentally incompetent to stand trial in this case and is recommitted to the custody of the Attorney General of the United States pursuant to 18 U.S.C. § 4241(d).

(2) The Attorney General shall, pursuant to 18 U.S.C. § 4241(d)(1), hospitalize defendant McNeal in a suitable facility for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the

12

foreseeable future defendant McNeal will attain the capacity to permit his trial to proceed.

(3) The mental-health personnel supervising defendant McNeal's commitment shall produce a brief status report every 30 days summarizing his progress towards restoration; such status reports, as well as any additional or final reports addressing defendant McNeal's competency, shall be filed with this court under seal and disclosed to defense counsel, the United States Attorney, and the United States Probation Office.

(4) If the director of the facility in which defendant McNeal is hospitalized determines that he has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, he shall promptly file a certificate and report to that effect with the clerk of the court, pursuant to 18 U.S.C. § 4241(e).

**(5)** If the director determines that defendant McNeal has successfully been restored to competency, he shall also instruct his staff to conduct a separate examination pursuant to 18 U.S.C. §§ 4242(a) and 4247(b) and (c) as to whether defendant McNeal was sane at the time of the alleged offense, the results of which should be described in a separate report to be filed with this court under seal and disclosed only to defense counsel.

**DONE**, this the 26th day of February, 2016.

                                         /s/ Myron H. Thompson
                                   **UNITED STATES DISTRICT JUDGE**