IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
UNITED STATES OF AMERICA      )
                              )    CRIMINAL ACTION NO.
     v.                       )       2:15cr199-MHT
                              )          (WO)
ELDRICK DEON McNEAL           )
```

OPINION AND ORDER

This long-standing criminal case is before the court on defendant Eldrick Deon McNeal's motion for release and dismissal.

McNeal was indicted in 2015 for one count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and has a lengthy history of competency-related proceedings in this court. With his motion, he claims that he should be released from custody and the criminal charge against him dismissed because the length of his confinement at a Bureau of Prisons (BOP) mental-health treatment facility exceeds that allowed by statute and is in violation of his due process right. For the reasons that follow, his motion will be denied.

I.

Since his indictment in 2015, McNeal has been repeatedly committed to the custody of the BOP for forensic evaluations of his mental competency and restorability. For ease of understanding, the court has set forth this commitment history in chronological order and has divided that chronology into three rounds of competency determinations and efforts at restorations.

*First Competency-to-Stand-Trial-Evaluation Round*

*November 30, 2015*: The court ordered that McNeal, who was incarcerated in a local jail in Montgomery, Alabama pending trial, be committed and hospitalized for a mental-competency-to-stand-trial evaluation at an appropriate BOP mental-health facility. *See United States v. McNeal*, 2:15cr199-MHT, 2015 WL 7721211 (M.D. Ala. Nov. 30, 2015) (Thompson, J.).

2

*January 28, 2016:* The BOP medical center in Butner, North Carolina, where the BOP hospitalized McNeal, issued a forensic report concluding that McNeal was likely mentally incompetent to stand trial. *See* BOP Report (doc. no. 63).

*February 22, 2016*: The court held a competency hearing by videoconference based on the January 2016 forensic report from the Butner facility.

*February 26, 2016*: The court entered an order finding that McNeal is not mentally competent to stand trial. *See United States v. McNeal*, No. 2:15cr199-MHT, 2016 WL 756570 (M.D. Ala. Feb. 26, 2016) (Thompson, J.). The court also ordered a 'restoration' determination, that is, that McNeal be further hospitalized at the Butner facility so that the Butner personnel could attempt to restore him to competency and could determine whether there was a substantial probability that in the foreseeable future he will attain the capacity to permit his trial to proceed. *See id.*

3

*March 20, 2017*:  The Butner medical facility issued a forensic report concluding that McNeal had been restored to competency.  *See* BOP Report (doc. no. 87). McNeal was then returned to a local Montgomery jail for the court to hold a restoration hearing, and, if the court found McNeal restored, to proceed with the criminal process.  *See United States v. McNeal*, No. 2:15cr199-MHT, 2017 WL 1955329 (M.D. Ala. May 11, 2017) (Thompson, *J.*).

*Second Competency-to-Stand-Trial-Evaluation Round*

*June 2, 2017*: Despite the March 2017 forensic report from the Butner facility concluding that McNeal had been restored, the court found that McNeal was again mentally incompetent to stand trial.  *See United States v. McNeal*, No. 2:15cr199-MHT, 2017 WL 2399578 (M.D. Ala. June 2, 2017) (Thompson, *J.*).  While in the custody of local jails, and before a restoration hearing could be held, McNeal had, according to a local psychologist he had retained, decompensated.  *See id.*

**4**

The court ordered that McNeal be recommitted to the Butner facility "to allow for further competency-restoration efforts, specifically, to allow for a long-term psychiatric stabilization and further attendance at competency restoration classes to reinforce past learning." *Id.* at *1. The court found "a substantial probability that he [would] attain capacity within the additional period of time based on his demonstrated progress and psychiatric stabilization during his previous commitment at ... Butner." *Id.* Both government and defense counsel agreed to this course of action. *See id.*

*December 6, 2017*: The Butner facility issued another forensic report that McNeal had again been restored and was competent to stand trial. *See* BOP Report (doc. no. 112).

*December 22, 2017*: Because McNeal had decompensated while in a local Montgomery jail, the court entered an order that McNeal was not to be returned from the BOP Butner facility to a local jail, but rather that

"[g]overnment counsel [was] to work with ... counsel for defendant McNeal, as well as with the clerk of the court, to arrange for a competency hearing, with defendant McNeal and his new counsel, as well as Butner mental-health staff who will testify, to participate by videoconferencing from the Butner facility."   Order (doc. no. 115).

*February 2, 2018*:   The court held a restoration hearing by videoconferencing.

*February 5, 2018*:   The court entered an order finding that McNeal has been restored to competency and was mentally competent to stand trial.   *See United States v. McNeal*, No. 2:15cr199-MHT, 2018 WL 706488 (M.D. Ala. Feb. 5, 2018) (Thompson, J.).   The court also ordered that he be returned from the Butner facility to a local Montgomery jail, but that certain precautions be taken to help "ensure that [he] receives his medication during and after transit from ... Butner to a local facility, and that he does not again decompensate prior to trial."   *Id.* at *2.

*Third Competency-to-Stand-Trial-Evaluation Round*

*June 14, 2018:* At the urging of government and defense counsel prior to trial, the court held another competency hearing. *See United States v. McNeal*, No. 2:15cr199-MHT, 2018 WL 3023092 (M.D. Ala. June 18, 2018) (Thompson, *J.*).

*June 18, 2018*: The court entered an order stating: "Based on the evidence in the record and the testimony presented at a competency hearing held on June 14, 2018, the court concludes, by a preponderance of the evidence--and with some admitted exasperation--that McNeal is once again not mentally competent." *United States v. McNeal*, No. 2:15cr199-MHT, 2018 WL 3023092, at *1 (M.D. Ala. June 18, 2018) (Thompson, *J.*). The court found, based on a report submitted by a local psychologist retained by defense counsel, that McNeal had again decompensated while in local jail custody. *See id.* at 2. The court ordered that McNeal be recommitted and hospitalized again at a BOP facility for "competency restoration treatment." *Id.* at *3.

The court further explained: "[I]n view of the fact that McNeal has apparently now twice decompensated in local custody, and that this is the third attempt at restoration, the court is concerned not only as to whether he can be restored, but whether he can be restored and stabilized for a sufficient period of time for the court to conduct a trial and, if warranted, to sentence him." *Id.*

*July 17, 2018*: During the hearing on this day, the government suggested that, because McNeal kept decompensating while in a local facility, arrangements should be made for McNeal to stay at the BOP facility, not only during and after competency and restoration hearings, but also "until just before and immediately after *any court proceeding*," including trial and, if warranted, sentencing. Order (doc. no. 202) (emphasis added). Defense counsel agreed that McNeal was receiving better care at the BOP facility than he was receiving at the local jail, and that government counsel's suggestion was "probably ... the best way" to

proceed.  July 17, 2018 Hr'g Tr. R.D. at 5.  The court memorialized this agreement in an order.  *See* Order (doc. no. 202).

*January 11, 2019*:  The BOP issued a forensic report that McNeal had regained competency and thus was restored.  *See* BOP Report (doc. no. 207).

*March 26, 2019*:  Defense counsel filed a report stating that McNeal was still incompetent.  *See* Def. Status Report (doc. no. 235).  The BOP issued a supplemental report stating that, because McNeal was "[a]t the present time ... experiencing significant symptoms of psychosis," he was again incompetent.  *See* BOP Report (doc. no. 241) at 11.

*March 29, 2019*: The court held another restoration hearing.

*April 9, 2019*: The court found that McNeal was again incompetent to stand trial.  The court ordered that McNeal be recommitted "to the custody of the BOP for competency restoration treatment."  *United States v. McNeal*, No. 2:15cr199-MHT, 2019 WL 1532228, at *3

(M.D. Ala. Apr. 9, 2019) (Thompson, J.).   The court cautioned again that, "in view of the fact that McNeal has previously decompensated in local custody, and that this is the fourth attempt at restoration, the court is concerned not only as to whether he can be restored, but also as to whether he can be restored and stabilized for a sufficient period of time for the court to conduct a trial and, if warranted, to sentence him." *Id.*

*October 22, 2019*: The Butner facility issued a forensic report stating that it is "unlikely [McNeal] will be restored to competency in the foreseeable future despite our extensive efforts." *United States v. McNeal*, No. 2:15cr199-MHT, 2019 WL 5718168, at *1 (M.D. Ala. Nov. 5, 2019) (Thompson, J.).

*October 29, 2019:* The court held an on-the-record hearing with government counsel and defense counsel "to discuss what the next steps in this litigation should be." *McNeal*, 2019 WL 5718168, at *1.  Counsel "agreed that, based on the October 22 BOP report, the next step

would be for the court to hold an evidentiary hearing on the issue of McNeal's 'restorability,' that is, 'whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings go forward.' 18 U.S.C. § 4241(d)(1)." *Id.* They "further agreed that, should the court find McNeal's 'mental condition has not so improved as to permit the proceedings to go forward,' 18 U.S.C. § 4241(d), the next step would be for the court to order the BOP to conduct a 'dangerousness' evaluation, that is, an evaluation of whether McNeal 'is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another.' 18 U.S.C. § 4246(a)." *Id.* Finally, they agreed that, "to avoid the further delay and inconvenience to the parties of holding two hearings, one on the issue of restorability and another on the issue dangerousness, a procedure that would require counsel for McNeal to travel from

Alabama to North Carolina two times, ... the court will instead set a hearing on both issues after the BOP has completed an evaluation of McNeal's dangerousness pursuant to § 4246." *Id*.

*November 5, 2019:* Based on the October 29 agreement of both defense counsel and government counsel, the court entered an order, first, delaying the hearing on restorability and, second, continuing McNeal's hospitalization so that the BOP evaluators could determine his dangerousness, with the court to hold a joint hearing on both restorability and dangerousness afterward and at the same time, and with McNeal to remain at the BOP facility in the meantime, that is, "even after the completion of the 'dangerousness' evaluation." *McNeal*, 2019 WL 5718168, at *2.

*March 17, 2020*: The BOP facility issued a 'dangerousness' report that "McNeal's unconditional release from custody and to the community *would* pose a substantial risk of bodily injury to another person or

serious damage to the property of another." BOP Report (doc. no. 266) at 16.

*March 19, 2020*: After holding a hearing, the court entered an order on the same day directing government counsel to arrange for both a restorability and dangerousness hearing as agreed upon by the parties. *See* Order (doc. no. 269).

However, because of the novel coronavirus pandemic and the challenges it presented (including that, because the Butner BOP facility has had positive COVID-19 cases, the facility has restricted visitation, even by defense counsel), the parties and the court have been unable to schedule any hearing as of the date of this order and opinion, but are still trying. In addition, both government and defense counsel have agreed that, contrary to their earlier understanding, this court would conduct only a 'restorability' hearing and that a United States District Court in North Carolina, where McNeal is presently confined, would conduct any 'dangerousness' hearing.

## II.

With the above background in mind, the court turns to McNeal's motion for release and dismissal. With his motion, he seeks his release in full from federal custody and the dismissal of the criminal charge against him.

## A.

## 1.

First, McNeal relies on the federal statute that was the basis for the above-described court-ordered commitments and hospitalizations for BOP competency determinations and later restoration efforts: 18 U.S.C. § 4241(d). Section 4241(d) provides in full:

> "If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize

14

the defendant for treatment in a suitable
facility--

> (1) for such a reasonable period of time,
> not to exceed four months, as is necessary
> to determine whether there is a
> substantial probability that in the
> foreseeable future he will attain the
> capacity to permit the proceedings to go
> forward; and

> (2) for an additional reasonable period of
> time until--

>> (A) his mental condition is so
>> improved that trial may proceed, if
>> the court finds that there is a
>> substantial probability that within
>> such additional period of time he will
>> attain the capacity to permit the
>> proceedings to go forward; or

>> (B) the pending charges against him
>> are disposed of according to law;

>> whichever is earlier.

> If, at the end of the time period specified, it
> is determined that the defendant's mental
> condition has not so improved as to permit the
> proceedings to go forward, the defendant is
> subject to the provisions of sections 4246 and
> 4248."

Sections 4246 and 4248 of Title 18 deal with

"Hospitalization of a person due for release but

suffering from mental disease or defect" and "Civil

commitment of a sexually dangerous person," respectively.

McNeal reads this statute to provide that, first, an initial restoration determination must be done within four months, *see* § 4241(d)(1), and, second, that this time for determination may be extended "an additional reasonable period of time" only "if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward." § 4241(d)(2)(A).

Focusing on the third round of commitment and restoration proceedings in 2019, McNeal contends that, because the court's April 9 commitment expired four months later, sometime in June or July, *see* § 4241(d)(1), and because there was no court *finding* ("that there is a substantial probability that within such additional period of time he will attain the capacity") authorizing an additional reasonable period of time pursuant to § 4241(d)(2)(a), he is now due to

16

be released from criminal custody and the charge
against him dismissed.

The court agrees with McNeal's reading of the
statute:  First, an initial restoration determination
must be done within four months, *see* 18 U.S.C. §
4241(d)(1); and, second, this determination period may
be extended "an additional reasonable period of time"
only "if the court finds that there is a substantial
probability that within such additional period of time
he will attain the capacity to permit the proceedings
to go forward." § 4241(d)(2)(A). *See United States v.
Baker*, 807 F.2d 1315, 1320 (6th Cir. 1986) ("We believe
that this provision requires that a determination as to
the individual's mental condition be made within four
months, and that the individual cannot be held pursuant
to section 4241 in excess of four months unless the
court finds that the individual is likely to attain
competency within a reasonable time.").

To be sure, the statute further provides, as an
"or" option, "for an additional *reasonable* period of

time until--... the pending charges against him are disposed of according to law." 18 U.S.C. § 4241(d)(2)(B) (emphasis added). But the court does not read this subpart (B) provision as allowing for a blanket additional period of time until the disposition of the criminal proceedings, for this understanding would not only obviate the need for the court findings in subpart (A) of § 4241(d)(2), it would also be open-ended, allowing for any extension to the end of the criminal proceeding as long as the court believed the extension was "reasonable." In other words, this understanding of subpart (B) would leave § 4241(d)(2) extensions to courts' whims of what they consider to be "reasonable." § 4241(d)(2). Surely, this could not have been the intent of the intent of § 4241(d). For why then have the finding requirement in subpart (A) of § 4241(d)(2)? And why even have the four-month limitation in § 4241(d)(1) at all?

Instead, the subpart (B) provision, in conjunction with the "whichever is earlier" provision, means that

if the disposition of the criminal charges occurs
before the end of the additional extension authorized
by subpart (A) of § 4241(d)(2), the hospitalization
must end.  In other words, subpart (B) provides for an
overall limitation that the subpart (A) additional
period of hospitalization cannot extend beyond the
disposition of the criminal charges.  Subpart (B) of
§ 4241(d)(2) operates on the assumption that there has
been compliance with subpart (A), not in the absence of
compliance with subpart (A).  Subpart (B) does not
obviate the need for compliance with subpart (A).  The
"or" option presented by subpart (B) applies only when
there has been compliance with subpart (A).  This
reading comports with the longstanding principle of
statutory construction that a statute should be
interpreted "to effectuate all its provisions, so that
no part is rendered superfluous."  *Hibbs v. Winn*, 542
U.S. 88, 89 (2004).

Nevertheless, the court must deny McNeal's request
for relief for essentially two reasons.  First, McNeal,

through his attorney, has repeatedly agreed to his
remaining at the Butner facility not only while the
competency and restoration proceedings were occurring
but also, most recently, pending the restoration and
dangerousness determinations, and even, if possible,
during any trial and sentencing.    In short, he
repeatedly and broadly waived the § 4241(d)(1)
four-month requirement as well as the need of any
§ 4241(d)(2)(A) additional court findings for an
extension.    And why he waived these requirements was
simple and understandable: as the background part of
this opinion reflects, his remaining at the Butner
medical facility throughout the process was, for the
most part, for his benefit.    Most importantly, he
repeatedly decompensated whenever he was returned to a
local Montgomery jail.    *See United States v. McNeal*,
No. 2:15cr199-MHT, 2017 WL 2399578, at *1 (M.D. Ala.
June 2, 2017) (Thompson, J.) (finding that McNeal
decompensated while in a local jail); *United States v.
McNeal*, No. 2:15cr199-MHT, 2018 WL 3023092, at *1 (M.D.

Ala. June 18, 2018) (Thompson, J.) (same). His remaining at the Butner facility was also more convenient for him and his attorney, for it obviated their having to repeatedly travel back and forth between Butner and Montgomery and their thereby prolonging the process with all the travel. *See United States v. McNeal*, No. 2:15cr199-MHT, 2019 WL 571168, at *1 (M.D. Ala. Nov. 5, 2019) (Thompson, J.) (court delayed hearing on restorability and continued McNeal's hospitalization so that the BOP evaluators could determine his dangerousness, with the court to hold a joint hearing on both restorability and dangerousness afterward and at the same time, and with McNeal to remain at the BOP facility in the meantime, that is, "even after the completion of the 'dangerousness' evaluation"). Finally, McNeal received much better mental-health care at Butner than he did in Montgomery. *See* Order (doc. no. 202) (defense counsel agreed with government's suggestion that, because McNeal was receiving better care at the BOP facility  and because

McNeal kept decompensating while in a local facility, arrangement should be made so that McNeal could stay at the BOP facility, not only during and after competency and restoration hearings, but also "until just before and immediately after *any court proceeding*").

2.

Second, the court must deny relief to McNeal because the requested relief would not be an appropriate remedy even in the absence of the broad and continuous waiver described above. For purposes of McNeal's motion, the key word in § 4241(d) is "hospitalize." The statute provides that, "The Attorney General shall *hospitalize* the defendant for treatment in a suitable facility." 18 U.S.C. § 4241(d). The statute authorizes *hospitalization* and says nothing about a defendant's criminal custody status and the criminal charges against him. If the statute's time requirements are violated then, the appropriate remedy would be limited to terminating a

defendant's *hospitalization* at a BOP medical facility, that is, to discharging the defendant from the BOP hospital.  Whether the defendant should be released from criminal custody and charges dismissed against him is a totally separate and unrelated matter.

So, if § 4241(d) had been violated here, the court would be limited to requiring the BOP to discharge McNeal from the Butner hospital facility and return him to a Montgomery jail for his restoration hearing, and the court does not understand McNeal's attorney to be asking for this relief, which, for the reasons given above at length, would be most detrimental to McNeal.


### B.

McNeal also asserts that, because there has been a failure to comply with § 4241(d), he is being held at the Butner facility in violation of his Fourteenth Amendment right to due process.  As explained above, there has not been a failure to comply with § 4241(d). Moreover, compliance with § 4241(d) aside, the court is

unaware of any 'procedural' or 'substantive' failures in this litigation that violated McNeal's right to due process.

***

Accordingly, it is ORDERED that defendant Eldrick Deon McNeal's motion for release and dismissal (doc. no. 275) is denied.

DONE, this the 5th day of May, 2020.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE